## B. F. Cutler v. Paul Sours, Mrs. J. U. Cottingham and Mary S. Spriggs.

1. ROADS AND BRIDGES—*Power of the Supervisors to Revoke Proceedings.*—Where, in the course of proceedings to lay out a highway, an appeal is taken to three supervisors, such supervisors have all the authority given by the statute to the commissioners of highways; and if, after making an order laying out the highway as petitioned for, and after proceeding to ascertain the total damages for the same, they are of the opinion that such damages are manifestly excessive and that the payment thereof will be an unreasonable burden upon the taxpayers of the township, they have power to and may lawfully revoke all the proceedings had by them upon such petition.

Certiorari, to quash proceedings of supervisors in highway matters. Trial in the Circuit Court of Coles County; the Hon. FRANK K. DUNN, Judge, presiding. Judgment for petitioner; appeal by respondents. Heard in this court at the November term, 1898. Reversed and remanded with directions.

ANDREWS & VAUSE, attorneys for appellant.

The return made by the inferior tribunal should contain a complete history of the proceedings in itself, and should not merely adopt as true, statements in the petition or affidavit for the writ. Star Glass Co. v. Longley, 64 Ga. 576; Mann v. Swift, 3 Cow. (N. Y.), 61.

Commissioners and supervisors on appeal have power to revoke after damages are assessed. Revised Statutes (S. & C.), Chap. 121, Sec. 48; Smith v. Com. of Highways, 150 Ill. 393; People v. Com. of Highways, 103 Ill. 640–645; People v. Com. of Highways, 88 Ill. 141.

The appeal taken by Williams and Cunningham to the County Court was a valid appeal. Revette v. Race, 152 Ill. 672; Chronic v. Pugh, 136 Ill. 539–544; Town of Partridge v. Snyder, 78 Ill. 519.

The County Court has jurisdiction of appeals from judgments of justices of the peace. A distinction must be made between error in the exercise of jurisdiction and lack of jurisdiction of the subject-matter. Wenner v. Thornton, 98 Ill. 165.

While section 59 of chapter 121 (S. & C. Statutes) confers the same power on the supervisors as the commissioners, it does not limit its exercise to the manner prescribed in previous sections as to its exercise by the highway commissioners. Board of Supervisors v. Magoon, 109 Ill. 150.

James W. & Edward C. Craig, attorneys for appellees, contended that the statute applies to no cases except where a jury has been waived, and to no other class of cases. Under no circumstances, in this sort of a case before the court now, could a jury have been waived, because there are no questions of fact that could have been submitted to the determination of a jury. This exact question has been decided in the case of Wackerle v. The People, 168 Ill. 250; Martin v. Martin, 170 Ill. 18.

Mr. Presiding Justice Burroughs delivered the opinion of the court.

This was a common law writ of certiorari in the Circuit Court of Coles County, issued on the petition of the appellees against the appellant and two others, supervisors of Coles county, requiring them to send up the record of a certain proceeding in regard to the laying out of a highway in the town of Lafayette, in that county, and asking the court to quash the order of those supervisors, made on March 28, 1898, in the proceedings regarding the said highway.

The petition for the writ of certiorari alleges that a valid petition for a new highway, describing it, was presented to the commissioners of highways of that town, and the same was denied by the commissioners; an appeal was regularly taken from their decision to the three supervisors, and by them the decision of the commissioners denying the petition was reversed, and the petition for the highway allowed, after which the supervisors proceeded to ascertain the damages to the three land owners over whose land the proposed highway passed.

The supervisors agreed with one of the land owners to take $120 as his damages for the highway passing over his

land, and, being unable to agree with the other two, caused their damages to be assessed by a jury before a justice of the peace, on September 19, 1897, where one was allowed $112.40, and the other $169 damages, which made the total amount of damages for the highway, as thus ascertained, $401.40.

On September 23, 1897, the supervisors made, and filed with the town clerk of the town of Lafayette, their order in regular form, laying out the highway as petitioned for, with a plat and survey of the same attached.

On September 29, 1897, the two land owners whose damages had been assessed before the justice perfected an appeal to the County Court of Coles County, from such assessment; and at the March term, 1898, of that court, on the trial of their cases thus appealed, their damages were assessed, one at $270 and the other $730.

On March 28, 1898, it being within ten days after the County Court had entered the judgments aforesaid, two of the supervisors (the other having been given notice) met in pursuance of notice given to all the parties in interest, and made an order in this petition for a road proceeding in which they recited in full all of the foregoing facts, and all the proceedings concerning the petition for a road, and then stated that they " being of the opinion that the damages finally assessed by the jury at the March term of the County Court of Coles County, in the within case, are manifestly too high, and the payment of the same would be an unreasonable burden upon the taxpayers of the town of Lafayette, do hereby revoke all the proceedings had upon within petition, this 28th day of March, A. D. 1898." Which order was, on the day it was made, filed in the office of the said town clerk, and by him entered in his highway record.

The petition for the writ of certiorari had attached to it, and made a part thereof, a copy of all the proceedings and files in the highway in question, certified to by said town clerk, as being correct, and the petition asked that a writ of certiorari issue, requiring the three supervisors, whom it

made defendants, to cause the record of the orders and pro-
ceedings on this road petition to be certified to the court,
and prayed, upon a hearing, the court would quash the order
of the supervisors made upon this petition for a road on
March 28, 1898, as the same was void for want of jurisdic-
tion in the supervisors to make it, after they had made the
valid order of September 23, 1897, declaring it a highway.

The supervisors, having been served with the writ, made
return thereto, in which they stated that the certified copy
of the orders, proceedings, and files made in the petition
for the road in question, as contained in the petition for the
writ, was true and correct.

The supervisors then moved the court to quash the writ
of certiorari, which was denied, and on motion of the peti-
tioners the court quashed the order of the supervisors
made March 28, 1898, as prayed in the petition for the writ.

The appellant, having perfected an appeal to this court
from this judgment, brings the case here and urges us to
reverse the same, on the ground that the court improperly
denied the motion of the supervisors to quash the writ, and
improperly quashed the order of the supervisors made March
28, 1898.

The principal contention of the appellees in this court is
that under the provisions of our road and bridge act, when
the supervisors, on September 23, 1897, after they had
ascertained the aggregate amount of damages to be $401.40,
that the owners of the land over which the road was to
pass were entitled to, by agreement with one, and assess-
ment of damages by jury, before a justice, as to the other
two, made their order in proper form, laying out the road
as a highway, and on the same day filed it, together with a
survey and plat of the road, with the town clerk of the
town of Lafayette, they were without power or jurisdiction
afterward to make the order they did on March 28, 1898,
revoking their former proceedings on this petition for the
road.

The appellant contends that inasmuch as the two land
owners properly appealed to the County Court from the

assessment of their damages before the justice, and such appeals were not determined until within ten days before March 28, 1898, then, and not until then, was it finally ascertained that the total damages for the road was $1,220; and as the supervisors were then of the opinion that such damages as were thus finally ascertained were manifestly excessive, and the payment of that amount would be an unreasonable burden upon the taxpayers of the town of Lafayette, under Sections 39, 47 and 48, of Chapter 121, S. and C. Ill. Statutes, 1896, they then had the power and jurisdiction to make the order of revocation that they did.

We are of the opinion that the three supervisors to whom the appeal from the decision of the commissioners of highways denying this road petition was taken, had all the authority given by our road and bridge act to the commissioners in regard to this road petition. (See Sec. 60, S. and C. Ill. Statutes, 1896, p. 3578. And under Sec. 39, Ibid., p. 3568, they were required, before they ordered the road to be established, to ascertain, as in that act thereinafter provided, the aggregate amount of damages the owners of the land over which the road passed would be entitled to; provided that, in case an appeal was taken from the assessment of damages before the justice of the peace, they might, in their discretion, make an order laying out the road, either before or after such appeal was determined, in the manner in the said act thereinafter provided; that is, first, the supervisors had to ascertain the total amount of damages to be paid to the land owners (mentioned in the section) before they could order the road to be established; second, these damages they must ascertain in the manner provided in that act; and third, they might, in their discretion, in the manner provided in that act, make an order laying out such road before or after the determination of an appeal. in case an appeal is taken from the assessment of such damages, before the justice of the peace.

By section 40 of this act the supervisors were directed to ascertain such damages, if they could, by agreement with such land owners as were competent to contract; or, if such

damages could not be ascertained by agreement, then by sections 41, 42, 43, 44, 45 and 46 of this act, they could ascertain them by procuring an assessment thereof by jury before a justice of the peace, where the trial must be conducted as in other civil cases, and the verdict of the jury assessing such damages must be returned to the justice and entered upon his docket in the nature of a judgment.

By section 47 of this act, the supervisors must, within ten days after the total amount of such damages were thus ascertained, either by agreement with the parties or by assessment before a justice of the peace and jury, as above stated, hold a meeting to finally determine upon the laying out of the road; and by section 48 of this act, when such damages were not wholly agreed upon, and the supervisors were of the opinion that the damages assessed by the jury were manifestly too high, and the payment of the same would be an unreasonable burden upon the taxpayers of the town, they might revoke all proceedings had upon the petition for the road, by a written order to that effect, which annulled all the proceedings had upon the petition for the road.

It seems to us that it is clear, from the provisions of said sections of this act referred to by us, that it was intended by the legislature to thereby give the supervisors (whose decisions in such matters are made, by section 61 of the act, final,) full power and discretion to revoke and annul all the prior proceedings and orders made on a road petition, whenever it is necessary to ascertain the aggregate amount of damages that should be paid to the land owners over whose land the proposed road passed, by assessing the same by jury, and the verdict fixes such damages at a sum so large that in the judgment of the supervisors it is manifestly too high, and the payment thereof would be an unreasonable burden upon the taxpayers of the town. But if this wholesome power and discretion are given the supervisors to be exercised only when such a wrongful result is reached in the assessment of such damages by the jury in the justice court, but ceases when the same result is reached on the final

assessment of such damages in the same case, on an appeal, in another court, then, indeed, is the power given short in the final accomplishment of the very wholesome result intended.

We are satisfied that by a fair construction of these sections of our statute the power to revoke for the cause named in the statute continues in the supervisors until the damages are finally ascertained by the verdict of a jury on an appeal, if an appeal is taken from the assessment thereof by the jury before a justice.

The further contention of the appellees is, that under the provisions of our road and bridge act, these two land owners had no right to prosecute appeals, in their cases, from the judgments entered on the verdicts of the jury in the justice's court, to the County Court, as they did, but by the provisions of said act, their damages, as assessed by the jury in the justice's court, was final; and as all the damages occasioned by laying out this road, were, in fact, ascertained as provided by said act when, on September 23, 1897, the supervisors made their order establishing the road in question as a highway, they could not afterward annul the proceedings on this road petition, as was attempted by them in their order made March 28, 1898.

But to so hold would be, we think, to ignore the proviso of said section 39, when it says that " in case *an appeal is taken from the assessment of damages before the justice of the peace*, the commissioners (or supervisors, if on appeal before them) may, in their discretion, make an order laying out, widening, altering, or vacating such road, either *before or after such appeal is determined, in the manner hereinafter provided.*" (The italics are ours.) The manner thereinafter in the act provided being by the revocation of the proceedings on the road petition as set forth in section 48, or by final confirmation thereof, as provided in section 49.

Besides, in the case of Ravette v. Race, 152 Ill. 672, Mr. Justice Magruder, at page 678 of the opinion, says : " By section 46, the verdict of the jury is returned to the justice and entered by him on his docket in the nature of a judgment. The appeal from this judgment must be to a higher

court, in the same way as an appeal from any other justice's judgment is taken."

As we are of the opinion that the supervisors had jurisdiction to make the order they did on March 28, 1898, we think the Circuit Court committed reversible error when it denied the motion of the supervisors, as defendants to the petition for the writ, to quash the writ, and therefore we reverse the judgment of that court and remand the case to it, with instructions to quash the writ and dismiss the petition on the motion made by the supervisors, with costs to the petitioners.

Reversed and remanded, with directions to quash the writ and dismiss the petition at costs of petitioners.